UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ROSANGELICA ALVAREZ and SHAHRAM SHAHANDEH, On behalf of themselves and all others similarly situated, ) ) ) ) ) ) Plaintiffs, ) ) vs. ) ) 5332, INC., HASSAM SALOUS, MOHAMMED SALOUS, WASEEM SALOUS, and BASSAM SALOUS, ) ) ) ) ) Defendants. ) | Case No. 22-CV-329 |

## PLAINTIFFS' UNOPPOSED MOTION TO APPROVE SETTLEMENT AND MEMORANDUM IN SUPPORT

The parties have reached an agreement to settle this case. The settlement is fair, reasonable, and beneficial to the class members and should be readily approved. The settlement is the result of approximately two years litigation between Plaintiffs, who consist of a group of seven (7) current and former servers, employed at IHOP Store No. 5332 in Lee's Summit, Missouri, up through April 18, 2022. The settlement establishes a common fund of $67,500 and provides each collective class member relief for alleged (but disputed) violations of the applicable tip-credit requirements of the FLSA, as well as related state law claims under the Missouri Minimum Wage Law. The projected amounts for each of the seven Plaintiff are detailed on Exhibit 2 of the Settlement Agreement. This Motion is unopposed by the Defendants.

I. **Facts and Procedural History**

On May 19, 2022, Rosangelica Alvarez and Shahram Shahandeh (the "Named Plaintiffs") commenced this litigation against 5332, Inc. and four individuals alleged to be its owners—Mohammed Salous, Hassam Salous, Waseem Salous, and Bassam Salous (the "Collective Action"). In the Collective Action, the Named Plaintiffs assert claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA), arising out of the Released Parties' alleged (but disputed) failure to pay minimum wages and overtime to a group of employees employed at IHOP Store No. 5332 in Lee's Summit, Missouri. In addition, the Named Plaintiffs also assert claims in the Collective Action, based on similar factual allegations, under the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500, *et seq.* (MMWL), which the Plaintiffs have alleged as a putative class action. As noted in the Complaint, the putative claims relate primarily to alleged (but disputed) violations of the tip-credit requirements for employees who worked as "servers" at IHOP Store No. 5332 in Lee's Summit, Missouri.

On May 26, 2022, the Named Plaintiffs filed an Amended Complaint to add two additional defendants—CAKE 5332, LLC and its alleged owner Abdul Hamideh (referred to collectively herein as the "Post-Sale Defendants"). Plaintiffs, through their counsel, Michael Hodgson of The Hodgson Law Firm, L.L.C. and Barry Grissom of Grissom & Miller Law Firm, LLC (proposed "Collective Action Counsel"), brought the claims asserted in the Collective Action pursuant to 29 U.S.C. § 216(b) on behalf of the Named Plaintiffs and other similarly situated employees who worked at IHOP Store No. 5332.

In response to the Amended Complaint, the Post-Sale Defendants filed a motion to dismiss, based in part on the assertion that the Post-Sale Defendants had only recently acquired IHOP Store No. 5332, Inc. (as part of an asset purchase from the other named Defendants). Subsequently, Collective Action Counsel and counsel for the defendants, filed a Joint Motion to Sever, which proposed splitting the litigation into two different cases: (i) one case against the "Pre-Sale Defendants" (*i.e.*, 5332, Inc., Mohammed Salous, Hassam Salous, Waseem Salous, and Bassam Salous) alleging claims up through April 18, 2022 (the date the Pre-Sale Defendants" relinquished operational control of Store No. 5332); and (ii) another case against the Post-Sale Defendants, alleging claims arising after April 18, 2022, the point at which the Post-Sale Defendants assumed operational control of Store No. 5332. In response to the Parties' joint filing, the Court ultimately chose to dismiss the Post-Sale Defendants from the Collective Action without prejudice, allowing Collective Action Counsel to then refile its post-sale claims against the Post-Sale Defendants in a separate litigation.

On March 31, 2023, the Parties filed a Stipulation and Motion for Conditional Step-One Notice Pursuant to 29 U.S.C. § 216(b) for the purpose of identifying opt-in class members. The Court granted the motion on April 21, 2023, thereby conditionally certifying a class consisting of all servers who worked at IHOP Store No. 5332 from May 19, 2020 (two years prior to the filing of the Complaint) through April 18, 2022 (the date the Pre-Sale Defendants relinquished operational control to the Post-Sale Defendants).

During the ensuing notice-period, the following five individuals filed timely notices of consent to join: Hailey Anne Henderson, Addison Fleming, Keyra Pineda,

Adam Said Hajeh, and Julie Lee Smith (hereinafter, collectively, the "Opt-In Plaintiffs").

On November 9, 2023, during a mediation conducted by David Vogel of Eischens Vogel Mediation Solutions, the Parties reached a settlement. The Plaintiffs and Collective Action Counsel believe, in view of the costs, risks, and delays of continued litigation and appeals balanced against the benefits of settlement to the Plaintiffs, that the settlement as provided in this Agreement is in the best interest of the Plaintiffs and is a fair, reasonable, and adequate resolution of the Collective Action.

To ensure that the settlement is in the best interests of the Plaintiffs, Collective Action Counsel engaged in significant written discovery including analysis of personnel records, pay records, and interviews with the Plaintiffs.

The Plaintiffs shall receive written notice of the settlement (the "Notice") and payment for alleged back wages via the settlement payment provided herein.

The main terms of the agreement are as follows:

1) Defendant will pay $67,500.00 to a common fund to compensate Plaintiffs for their alleged but disputed backpay, liquidated damages, service awards, costs and attorney fees;

2) Plaintiffs will each receive a share of the settlement proceeds based on the compensable time worked during the representative class period;

3) The two named Plaintiffs will each receive a modest service award from the total common fund to compensate them for the time and service to the class;

4) Fifty percent (50%) of the Plaintiffs' payments will be classified as wages, with the remaining fifty percent (50%) to be classified as alleged but disputed liquidated damages;

5) Collective Action Counsel will be paid an attorney's fee of $22,500, from the

Page 4 of 13
Case 4:22-cv-00329-FJG    Document 60    Filed 12/18/23    Page 4 of 13

common fund, as well as litigation expenses of $3,521.11;

6) The settlement funds will be delivered to Collective Action Counsel within ten business days of the approval of the settlement; and

7) Collective Action Counsel will administer the settlement and insure all checks are sent to Plaintiffs promptly.

8) In addition to the common fund of $67,500, Defendant has agreed to pay the full amount of the mediator's fee for the Parties' November 9, 2023 mediation.

The settlement agreement is attached as Exhibit 1.

## II. Question Presented

Should the Court grant Plaintiffs' motion to approve the settlement of this case when the settlement is fair, reasonable and provides an immediate, significant benefit to the class members who affirmatively chose to participate, and ends contested litigation prior to trial?

## III. Argument

### A. Approval of the settlement is warranted.

An FLSA collective action is not a class action – individuals participating affirmatively choose to be bound and represented by counsel and there are no absent class members whose claims are being settled. *See Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 678 (D. Kan. 2004); *Clougherty v. James Vernor Co.*, 187 F.2d 288, 290 (6th Cir. 1951). Thus, the reasons for judicial scrutiny of class action settlements are not present in FLSA opt in settlements, because absent class members are not bound by the case's outcome. *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972); *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C. 1977).

Nonetheless, courts have held that settlement of an FLSA collective action generally requires court approval because private settlements will not effectuate a valid release for the

employer. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). Accordingly, wage claims under the FLSA are typically settled or compromised in one of two ways. First, under 29 U.S.C. § 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. Second, under a private FLSA enforcement action, district courts may approve settlements resulting from contested litigation over a *bona fide* dispute between the parties. *Lynn's Food Stores*, 679 F.2d at 1353. When the latter option is proposed, as here, the Court should approve the settlement "after scrutinizing the settlement for fairness." *Id.* (*citing Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)).

The standard for court approval is straightforward: a district court should approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA. *Garcia v. Triumph Foods*, Case No. 11-6046-CV-SJ-ODS (W.D. Mo. 7/12/12) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). First, the court must be satisfied that the settlement was the product of "contested litigation." *Id. (*citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms'-length settlement as *indicia* of fairness. *Id*. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Plaintiffs respectfully submit that this Court should conclude that the parties' settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

This settlement was the product of arm's-length negotiations by experienced counsel and provides meaningful, significant, monetary relief to all party Plaintiffs. It also eliminates the very

real and inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The litigation was heavily contested by Defendants, both as to liability and damages. The parties attempted an early mediation that was unsuccessful, before ultimately agree to stipulate to conditional certification. Thereafter, the parties exchanged additional information related to the wages, hours, tip credit, and related personnel documents for the class members. After Collective Action Counsel's review and analysis of such information, the parties attended a second mediation, where the ultimately reached a settlement (with experienced mediator David Vogel) following approximately 18 months of litigation. While Plaintiffs claimed that Defendants failed to provide them with a sufficient tip-credit notice and further asserted violations of the "80/20" rule; the Defendants claimed that, among other things, they complied at all times with the FLSA, provided sufficient tip-credit notice, and were compliant with all appliable tip credit requirements, including the 80/20 rule. Defendants further questioned the availability of tip credit notice requirements under state law, as well as the Plaintiff's damages calculations, and further raised objections to the applicability of the 80/20 rule during portions of the class period. Therefore, both substantive and procedural disputes created obstacles in the litigation.

The proposed settlement offers a significant payment to the Plaintiff and participating class members now. Participating class members will receive meaningful awards after costs and attorneys' fees depending on the amount of training each class member performed during the class period. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. Or, such recovery may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Accordingly, Plaintiffs respectfully request that this Court approve the settlement and order that the Plaintiff and the Participating Class Members be paid in accordance with the terms of the settlement agreement. A proposed order granting settlement approval is attached as Exhibit 2.

### IV. Plaintiff's Application for Fees & Expenses Should be Approved.

As part of the settlement, Plaintiffs request one-third of the Settlement Fund for payment as attorneys' fees ($22,500.00), plus expenses of $3,251.11. Such fees and expenses are reasonable. Moreover, as noted above, Collective Action Counsel was able to minimize expenses by negotiating that Defendant would pay the full mediator's fee for the Parties' recent November

9, 2023 mediation.

### A. Legal Standard

The Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the parties have done so because Defendants have agreed that they will not oppose up to one-third of the Settlement Fund as attorneys' fees.  The Parties in this matter have also agreed to a common fund settlement. When a settlement yields a common fund for class members, fees must be paid from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). This common fund doctrine is firmly rooted in American case law.  *See, e.g.*, *Trustees v. Greenough,* 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

"In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well-established.'" *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.,* 364 F.Supp.2d 980, 991 (D. Minn. 2005). Indeed*,* courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnston v. Comerica Mortg. Corp,* 83 F.3d 241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy,* 364 F. Supp. 2d at 993.

Compensating counsel in common fund cases on a percentage basis makes good sense.  First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method.  Second, it rewards efficiency and provides plaintiffs' counsel with a strong

Page 9 of 13
Case 4:22-cv-00329-FJG     Document 60     Filed 12/18/23     Page 9 of 13

incentive to effectuate the maximum possible recovery under the circumstances. *See In re Xcel Energy,* 364 F.Supp.2d at 993, 996; *Kirchoff v. Flynn,* 786 F.2d 320, 325-26 (7th Cir. 1986). Third, use of the percentage method decreases the burden imposed on the court by the "lodestar" method[1] and assures that class members do not experience undue delay in receiving their share of the settlement. This is especially true here where the value of hours spent litigating this matter far exceed the requested settlement amount as the parties have briefed motions to dismiss, engaged in significant written discovery, taken depositions and spent over ten hours mediating.

As courts including the Eighth Circuit have routinely recognized, using a percent of the fund approach most closely aligns the interests of the lawyers with the class, since the more that is recovered for the class, the more the attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations); *see also Stoneridege Inv. Partners LLC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 2005 U.S. Dist. LEXIS 14772, 40-42 (D. Mo. 2005). Moreover, other Circuits express "a preference for the percentage of the fund method" in class actions. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); *Swedish Hospital Corp v. Shalala,* 1 F.3d 1261, 1269, 1272 (D.C. Cir. 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases" and that "a percentage of the fund approach more accurately reflects the economics of litigation practice … and most closely approximates the manner in which

---

[1] Grissom & Miller Law Firm and The Hodgson Law Firm maintain contemporaneous records of the time spent on their wage and hour cases and will provide lodestar information to the Court upon request.

Page 10 of 13
Case 4:22-cv-00329-FJG   Document 60   Filed 12/18/23   Page 10 of 13

attorneys are compensated in the marketplace for these types of cases."); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("the percentage of the fund approach is the better reasoned in a common fund case"); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome."); *Prudential Ins. Co.*, 148 F.3d at 333 (the percentage of the fund approach "rewards counsel for success and penalizes it for failure.") (citation omitted).

While "[t]he Eighth Circuit has not set forth a specific percentage benchmark to analyze the reasonableness of attorney fees under the percentage-of-the-fund method," courts in this Circuit "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (quoting *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%); *Hernandez v. Texas Capital Bank*, Case No. 07-0726-ODS, Doc. 107 (W.D. Mo. July 14, 2009) (approving 33% of fund) (Smith, J.); *Busler v. Enersys Energy Products Inc., Case* No. 09-0159, Docs. 111 & 120 (W.D. Mo.) (same) (Gaitain, J.); *Osby v. Citigroup, Inc.,* Case No. 5:07-06085-NKL, Doc. 128 (W.D. Mo. June 22, 2009) (same) (Laughrey, J.); *In re U.S. Bancorp Litigation*, 291 F.3d at 1038 (affirming award of 36% of common fund plus expenses); *Hamilton, et al. v. ATX Services Inc.*, Case no: 08-0030-SOW (W.D.Mo. May 6, 2008) (Order under seal approving attorneys' fees and expenses at 34%); *Burks*, Case No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91, p. 3, ¶ 8 & Doc. 102, p. 4, ¶ 9) (approving 33 1/3% attorney's fee award in call center wage and hour claim); *Wolfert*, Case No. 4:08CV1643 (TIA) (E.D. Mo. Oct. Aug.

21, 2009) (Doc. 37, p. 2 & Doc. 38, p. 4, ¶ 9) (approving attorney fee award of 33% of the maximum gross settlement amount in call center overtime claim); *EEOC v. Fairbault Foods, Inc.*, Civ. No. 07-3976, 2008 WL 879999, at *4, 2008 U.S. Dist. LEXIS 29132, at *13 (D. Minn. Mar. 28, 2008) (approving fee award of approximately 30% of the settlement fund); *Carlson,* 2006 WL 2671105, at *8, 2006 U.S. Dist. LEXIS 67108, at *22 (approving a fee award of $5,325,000 representing 35.5% of the of the $15,000,000 settlement fund); *Morak, et al. v. CitiMortgage, Inc.*, Case no.: 07-1535 (E.D.Mo. Sep. 26, 2008) (order under seal approving attorneys' fees and expenses at 33%), *Staton v. Cavo Communications, Inc.*, Case no.: 08-0273 (E.D.Mo. Jan. 14, 2009) (order under seal approving attorneys' fees and expenses at 33%) *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case); *Edney, et. al. v. The Golf Stop, Case No. 11-00185-CV-W-DW (W.D. Mo, Nov. 11, 2011)*(Whipple, J.)(approving a fee award of 33% of the settlement fund); *Michaels v. Diodes Fabtech*, No. 4:12-cv-01082-GAF (W.D. Mo., January 14, 2013)(Fenner, J.)(same).

Indeed, the representation agreement between Collective Action Counsel and the Plaintiff is for a fee of _____%. As a result, the requested fee percentage is below that agreed to and which represents what a lawyer can reasonably obtain from a client. Similarly, all class members choosing to participate are informed that Collective Action Counsel will receive one-third of the fund. Plaintiff, therefore, requests an attorney fee award of one-third of the common fund (for a total attorney's fee of $22,500.00) and expenses in the amount of $3,251.11.

## CONCLUSION

The settlement presented is an immediate, very real, very substantial, and excellent settlement. Plaintiff, therefore, respectfully requests that the Court approve the settlement in whole and without delay. Further, Plaintiff requests that the Court stay the case pending administration of the Settlement as set forth in the Agreement (Exhibit 1) and the Proposed Order (Exhibit 2).

Respectfully submitted, this _____ day of December, 2023.

/s/_____
Michael Hodgson, MO Bar No. 63677
The Hodgson Law Firm, LLC
3609 SW Pryor Rd.
Lee's Summit, Missouri 64082
816-600-0117
mike@thehodgsonlawfirm.com
-and-
Barry R. Grissom, KS Bar #10866
Grissom Miller Law Firm, LLC
1600 Genessee Street, Suite 460
Kansas City, MO 64102
816-336-1213
barry@grissommiller.com
-ATTORNEYS FOR PLAINTIFFS-

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was electronically filed and served on all parties of record via the Court's CM/ECF filing system on _____, 2023.

/s/_____
Michael Hodgson